**Percy H. SMITH et al.**

v.

**Mary M. (Smith) VARNEY et al.**

Supreme Judicial Court of Maine.

Aug. 30, 1973.

J. Armand Gendron, Sanford, for plaintiffs.

John D. Bradford, Biddeford, Thomas J. Reagan, Kennebunk, for defendants.

Before WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

PER CURIAM.

Plaintiffs have appealed from a judgment entered in the Superior Court (York County) in a civil action brought by plaintiffs seeking a declaratory judgment to determine their rights in three particular parcels of land. The judgment adjudicated that plaintiffs are entirely without rights in said parcels.

We deny the appeal of plaintiffs by adopting the opinion written by Armand A. Dufresne, Jr., Chief Justice, Supreme Judicial Court, who acted in this proceeding as the Justice presiding in the Superior Court.

The opinion of Chief Justice Dufresne is hereinafter set forth in full.

"Plaintiffs, Percy H. Smith and Ida M. Smith, husband and wife, on October 21, 1963 brought a complaint for declaratory judgment seeking a judicial adjudication of the rights of the parties to three parcels of land described in paragraphs 1 and 2 of their complaint, all under 14 M.R.S.A. §§ 5951–5963. From twenty-three defendants originally named, only two, Roger Bragdon and Gerry A. Gile, were not defaulted and remained active defendants in the proceeding. Roger Bragdon died intestate on December 24, 1965 and his daughter, Marjorie B. Keyes, the duly appointed administratrix of his estate, was substituted for him as party defendant under Rule 25(a)(1) M.R.C.P. By subsequent amendment, duly allowed, Gile Orchards, Inc., a purchaser of part of the land, was brought in as an additional party defendant under Rules 19 and 21, M.R.C.P.

"The parties agree that the plaintiffs are successors in title to whatever interest Edgar L. Smith might have in the real estate in dispute between the parties and that as of March 2, 1931 Edgar L. Smith was the sole owner in fee simple of that real estate, to wit, the 36-Acre Lot and the 32-Acre Lot referred to in paragraph (1) of plaintiffs' complaint, and of the Scribner Lot referred to in paragraph (2) of the plaintiffs' complaint. (See consent interlocutory judgment entered in the Superior Court for York County on May 31, 1967.)

"The facts may be summarized as follows: Edgar L. Smith, plaintiffs' predecessor in their chain of title, on March 2, 1931 conveyed the disputed parcels of land to Roger Bragdon by valid mortgage deed as security for the payment of the sum of eight thousand ($8,000.00) dollars on demand with interest at the rate of six (6%) per centum per annum. This mortgage deed was recorded in the York County Registry on November 16, 1931. The parties agree that this mortgage has never been foreclosed. On October 7, 1932 Edgar L. Smith executed another valid mortgage deed of the disputed parcels to Casco Mercantile Trust Company (Casco), subject to all incumbrances of record and unpaid taxes, if any. This mortgage deed, recorded in the York Registry on October 9, 1932, contained full covenants of a warranty deed, the covenant against incumbrances, however, excepting the incumbrances of record and unpaid taxes as previously stated in the other part of the deed. This second mortgage was given as security for all obligations then owing to, or thereafter to be incurred by Smith with, the Casco Mercantile Trust Company. The bank on November 24, 1936 started foreclosure proceedings on the Smith mortgage, the first publication of notice of foreclosure being on November 28, 1936. The one-year period of redemption ran out on November 28, 1937. These foreclosure proceedings were initiated by the conservator of the bank, the conservatorship dating from March 18, 1933. In 1947, however, the conservator, deeming the bank's rights subject to the first mortgage of no value to the conservatorship, petitioned the Court having jurisdiction of the conservatorship, for the right to renounce all right, title and interest which he had in the disputed parcels and to abandon the same. This request was duly granted by order dated November 24, 1947.

"The plaintiffs contend that the decree of abandonment revested in the plaintiffs, as successors in title of Edgar L. Smith, the equity of redemption in the first mortgage, in other words, worked an automatic assignment of the equity of redemption which Casco owned in the premises from Casco to them. I cannot agree with the plaintiffs' non-sequitur.

"A mortgagor, or person claiming under him, may redeem mortgaged premises within one year after the first publication of the notice of foreclosure, and if not so redeemed, his right of redemption is forever foreclosed. Revised Statutes, 1930, chapter 104, section 7. This right of redemption, once extinguished, cannot be revived by any court, nor can the period of redemption be abridged or enlarged by operation of law. Courts must abide by the statutory requirements except in exceptional cases where a court of equity may provide relief. See Carll v. Kerr, 1914, 111 Me. 365, 89 A. 150. The instant case does not fall within any exception to the general rule.

"In First Auburn Trust Co. v. Buck and Wellman, 1940, 137 Me. 172, 16 A.2d 258, our Supreme Court has said the accepted doctrine in Maine is that a mortgage is regarded as a conditional conveyance vesting the legal title in the mortgagee. When Smith executed the first mortgage to Bragdon, all that remained in him was the equity of redemption, i.e., the right to redeem the property by payment of the indebtedness for which the real estate was conveyed as security. This is known as the equitable title. When Smith executed the second mortgage to Casco, he conveyed to the bank his equity of redemption from the Bragdon mortgage. This is all he had to convey and when the period of redemption from the foreclosure of the bank mortgage expired, then the right to redeem from the Bragdon mortgage vested in the bank and Smith had forever lost any interest whatsoever in the disputed parcels of real estate. Casco's equity of redemption in the Bragdon mortgage could under no possible theory of law revert to the mortgagor or his successors in interest, since the mortgagor's interest as such in the real estate was cut off by the foreclosure and the expiration of the period of redemption. See, Marshall v. Francis, 1955 Mass. [332 Mass. 282,] 124 N.E.2d 803; Mallory v. Agee, 1932, 226 Ala. 596, 147 So. 881.

" 'A mortgagor whose equity of redemption has been foreclosed by a second mortgagee can not redeem the first mortgage, because his title is then wholly extinguished and vested in the second mortgagee, who alone is entitled to redeem the first mortgage.' " Jones on Mortgage, 8th Ed., Section 1355.

"This principle of law is convincingly explained by the Connecticut Court in Colwell v. Warner, 1869, 36 Conn. 224, at page 234:

" 'In ordinary cases the mortgagor conveys to the mortgagee the title to real estate as security for a debt. There remains in the mortgagor the right to pay the debt, and thereby redeem the property mortgaged. The process of foreclosure cuts off this right, and vests the title absolutely in the mortgagee. The same thing is true of a second mortgage, which is but a mortgage of the equity of redemption. The whole equity is conveyed to the mortgagee, the same as the whole title is conveyed to the first mortgagee. The right remaining in the mortgagor is a right to redeem the equity of redemption. That right carries with it, as an incident to it, a right to redeem the first mortgage. Now when the second mortgagee forecloses the mortgagor, the whole equity of redemption vests in him, precisely as the whole estate vests in the first mortgagee after foreclosure, and he alone is entitled to redeem the first mortgage. The incidental right of redeeming the first mortgage goes with the thing to which it was an incident the right to redeem the second mortgage.

The second mortgage conveys all the mortgagor's interest to the mortgagee.' "

"The plaintiff's reverter theory which would revest the mortgagor with his former equity of redemption in the first mortgage, lost through foreclosure of the second mortgage when the equity of redemption is abandoned by the second mortgagee in the course of a bankruptcy or conservatorship proceeding, militates against our judicial decisions. See, Kirstein Holding Company v. Bangor Veritas, Inc., 1933, 131 Me. 421, 163 A. 655 (bankruptcy); Cooper v. Casco Mercantile Trust Co., 1936, 134 Me. 372, 186 A. 885 (conservatorship). The conservator's action in foreclosing the second mortgage in 1936 was taken in performance of his duties to try to collect the indebtedness owed the bank. There existed the possibility that the mortgagor might pay the debt for which the mortgage had been given as security and redeem the property. When in 1947 the conservator realized that the equity of redemption from the Bragdon mortgage was an onerous asset, he sought permission to abandon it. The release of the equity of redemption had the only effect of turning the asset back from himself as conservator to the bank from which it came originally. To these proceedings, Edgar L. Smith or his successors in title were complete strangers.

■ "When a mortgagor has conveyed the mortgaged land by deed of warranty, he has no such interest remaining as will enable him to maintain a complaint against the mortgagee to redeem the mortgage. True v. Haley, 1844, 24 Me. 297; Phillips v. Leavitt, 1867, 54 Me. 405. And his grantee is under no obligation to him to redeem. Elder v. True, 1850, 32 Me. [104] 105.

" 'A mortgage of land, as usually drawn, is in form a deed of warranty with a condition subsequent defining the means by which the grantor may defeat the conveyance. The legal title, therefore, passes immediately upon the delivery of the mortgage; and the mortgagee is re-garded as having all the rights of a grantee in fee, subject to the defeasance.' " Gilman v. Wills, 1877, 66 Me. 273.

■ "When the condition subsequent of defeasance was removed by the foreclosure of the second mortgage, the second mortgagee stood in the same position of a grantee of the equity of redemption by warranty deed. I must conclude that the plaintiffs have no standing.

■ "Even if I assume legal standing in the plaintiffs, they could not recover except upon the strength of their own title, and in this they have not sustained their burden of proof. Showing no title in themselves, the plaintiffs cannot prevail even if it turned out that the defendants had no title. Hardison v. Jordan, 1946, 142 Me. 279, 50 A.2d 447. In the instant case, however, the evidence discloses that the defendants have the legal title through the Bragdon mortgage. No consideration need be given to the effect of a quitclaim deed of the parcels in dispute from Casco to Roger S. Bragdon dated December 12, 1955 executed by an assistant treasurer of Casco Mercantile Trust Company, which was then dormant and not operative as a going concern. Nor should any of the other issues raised in these proceedings receive further treatment.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiffs have no rights whatsoever in and to the 36-Acre Lot and the 32-Acre Lot referred to in paragraph (1) of their complaint, and in the Scribner Lot referred to in paragraph (2) of their complaint and no right whatsoever to redeem the Bragdon mortgage . . . . ."

The entry is

Appeal denied.

DUFRESNE, C. J., did not sit.

WEBBER, J., sat at argument but retired before the decision was rendered.