**Rosaire MARTEL**

**v.**

**Laurence C. BEARCE d/b/a Bearce's Super Market.**

Supreme Judicial Court of Maine.

Nov. 15, 1973.

Dufresne, C. J., and Webber, J., did not sit.

Rocheleau & Fournier, by William Rocheleau, Jr., Paul C. Fournier, Lewiston, for plaintiff.

·Linnell, Choate & Webber, by G. Curtis Webber, Auburn, for defendant.

Before WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This case comes to us on appeal from the judgment of a Justice in the Superior Court holding that a sheriff's sale of real

estate, record title to which was in a person other than the debtor, was a nullity and that the Plaintiff purchaser was entitled to recover back the purchase price from the creditor who had levied on and sold the property. We deny Defendant's appeal.

The property in question had been owned during her lifetime by a Miss Payson. In 1964 Defendant had brought an action against her on which he subsequently obtained a judgment. On March 6, 1969, after her death, the Defendant levied his execution against this lot of land. On April 1, 1969, after public notice, an execution sale of this lot was held at the county sheriff's office.

However, in the meantime, the real estate taxes on the land had not been paid and a tax lien certificate had been filed in the Registry of Deeds against the property for each of two years. These liens matured in 1965 and 1966 and thus, by operation of law,[1] the City of Auburn had become the record title holder on November 26, 1966.[2]

At the time of the sale, the Plaintiff, in person, bid $800.00 for the property and a higher bid of $1200.00 was made by another person for an absent principal. The Defendant's attorney, in the presence of the Plaintiff, gave the agent of the highest bidder—and then, by telephone, his principal—a disclosure of title defect, the extent of which disclosure is in dispute.

The Presiding Justice (who heard the matter jury-waived) made, at Defendant's request, several specific findings of fact concerning this disclosure:

"(7) Upon receiving the bids from defendant [sic] and the representative of the other bidder whose bid was higher than plaintiff's defendant's attorney explained to the latter, within the hearing of the plaintiff, that the property was subject to an expired tax lien, that the title could only be established through legal proceedings against Madelyn Wardwell, that he was 'buying a lawsuit', and that, as a result of the foregoing, he had not expected to receive any bids.

(8) At the request of the representative of the other bidder, defendant's attorney called the bidder on the telephone, within the hearing of the plaintiff, and repeated the same explanation as to the nature of the interest in the land being sold.

(9) As a result of the foregoing explanation over the telephone, the other bidder asked permission to and did withdraw his bid.

(10) After concluding his telephone conversation, defendant's attorney asked plaintiff if he had heard the conversation, to which plaintiff replied that he had.

(11) Defendant's attorney then asked if plaintiff wished to withdraw his bid as the other bidder had done to which he replied that he did not."[3]

These findings of fact by the Justice are supported by the record and we do not find them to be clearly erroneous.

The Justice also found as a matter of fact and law that

"at the time of the attachment of the real estate by the Defendant the third

---

1. 36 M.R.S.A. § 943.

2. On March 31, 1968 the city quit-claimed its title to Madelyn Wardwell who did not record her deed until immediately after the sale to Plaintiff, but this transaction will not prove to affect the outcome of this case.

3. The Justice declined Defendant's request that he also find:

"Defendant's attorney then asked plaintiff whether he was sure that he understood the infirmities in the title he was acquiring to which he replied that he did and was only interested in determining when he could get a deed of the property in question."

party debtor had no legal interest in the real estate and that the Defendant acquired no interest of any legal description in the real estate allegedly attached and that the legal effect of the Sheriff's sale was a nullity. In the absence of any legal right, title or interest acquired by the Defendant by virtue of his alleged attachment and levy of sale, the purported sale of the Defendant's interest in the real estate was without consideration and was a nullity."

The Defendant-Appellant contends that as the record demonstrates only the existence on the records of the Registry of Deeds of the two undischarged tax lien certificates, the Justice must have assumed that the City of Auburn had proceeded correctly in each of the steps necessary to the valid assessment of taxes and the filing of effective tax lien certificates. The Defendant asserts that a conclusion that the record title passed into the City of Auburn upon the maturity of these liens can be made only upon proof—which is not present here—that each of those preliminary steps had been taken correctly.

■ This State has accepted the doctrine that a mortgage is regarded as a conditional conveyance vesting the legal title in the mortgagee. All that remains in the mortgagor is the equity of redemption. First Auburn Trust Co. v. Buck, 137 Me. 172, 16 A.2d 258 (1940). When that equity of redemption has been lost by the expiration of the statutory period, nothing remains in the mortgagor except the contingency that exceptional circumstances may exist which will entitle him to equitable relief. His legal title was conveyed when he executed the mortgage and his equitable title disappeared with the expiration of the period of redemption. Smith v. Varney, Me., 309 A.2d 229 (1973).

■ The statute[4] gives to the municipality upon the recording of a tax lien mortgage certificate all the rights of the mortgagee except the right to possession. The only interest in the real estate, except the right to possession, remaining in the owner is the right to redeem the property upon paying the taxes due plus interest and costs. The passage of eighteen months' time during which the taxes remain unpaid places complete record title in the municipality. Inhabitants of Lincolnville v. Perry, 150 Me. 113, 115, 104 A.2d 884 (1954). The former owner's right of redemption—and, in fact, his title—are extinguished. As in the case of the common law mortgagor, there remains only the contingency that he may be able (if he chooses to try) to demonstrate in a legal action a failure in the procedure by which his title was lost.

It is true that facts may exist—unknown now to the Court—which could establish that there had not been strict compliance with statutory requirements, and so it is possible that the city may on some future day be found to have acquired no title at all. Arsenault v. Inhabitants of Town of Roxbury, Me., 275 A.2d 598, 599 (1971). But a similar uncertainty can exist as to title depending upon the ostensibly correct execution of a warranty deed, the effectiveness of which might some day be destroyed by proof of forgery. Horvath v. National Mortgage Co., 238 Mich. 354, 213 N.W. 202, 56 A.L.R. 578 (1927); 23 Am. Jur.2d Deeds § 139 (1965); 26 C.J.S. Deeds § 68 (1956).

In any event, the only evidence presented to this Justice justified his conclusion that—for the purposes of this case—complete *title* to the lot in question had passed from the assessed owner to the city. Having so found, the Justice ruled that the sheriff could convey no interest to the Plaintiff and that the purported sheriff's sale was without consideration and a nullity. He also ruled that the Plaintiff was entitled to recover the purchase price.

■ The Defendant insists that the sheriff attached and sold an attachable in-

4. 36 M.R.S.A. § 943.

terest in the real estate.[5] While it is abundantly clear that a right to redeem *is*, by statute, a right and interest in real estate and attachable, this former owner's right to redeem had been extinguished. There remained in the administrator only the contingent right to attempt to demonstrate by legal action that the estate's lost interest in the property should be restored. So the first question becomes whether such a right is an attachable interest in land. The Defendant introduced evidence to show that in that locality it is recognized that this right in the delinquent taxpayer (and persons claiming through him) has at least a nuisance value. The existence of value alone does not make the delinquent taxpayer's contingent right an attachable interest in land, however. It is more a chose in action than an interest in land and no provision was made for the levy and sale of such contingent rights by section 2201.

■ In our opinion it was not intended that the statutory right of attachment of interests in land should extend to include a mere contingent right to reclaim a lost title through legal action.

We have held that other somewhat similar contingent rights were not subject to attachment in the absence of statutory authorization. A creditor was held unable to reach by attachment the equitable interest of a debtor-husband in property conveyed by a third party to the wife but purchased with the husband's money, allegedly to defraud his creditors. Fletcher v. Tuttle, 97 Me. 491, 54 A. 1110 (1903). The interest of a mortgagee in land, the mortgage upon which had not yet been foreclosed, was held not subject to attachment. Smith v. People's Bank, 24 Me. 185 (1844).[6] The Massachusetts Court, in McMahon v. Gray, 150 Mass. 289, 22 N.E. 923 (1889)—cited with approval in *Fletcher*—found that a widow's right to have dower assigned to her out of the lands of her deceased husband was still contingent as to identity of the land to be assigned and could not be attached until the assignment had been made.

We are satisfied that the contingent right of the Administrator to attempt to regain by legal action title which had been lost completely is not an attachable interest.

■ We note, further, that the Defendant purported to have levied his execution upon a lot of land and not upon a chose in action. We do not consider that this satisfied the requirement that the right or interest of the debtor seized and sold must be described either specifically or in terms broad enough to include it, whatever be its nature. Highland Trust Co. v. Hamilton, 134 Me. 64, 181 A. 825 (1935).

---

5. 14 M.R.S.A. § 4451 describes attachable real estate:
   "All real estate liable to be taken on execution as provided in chapter 403; the right to cut and carry away grass and timber from land sold by this State or Massachusetts, the soil of which is not sold and all other rights and interests in real estate may be attached on mesne process and held to satisfy the judgment recovered by the plaintiff. . . ."
   14 M.R.S.A. § 2201 controls the levy of executions by sale and reads:
   "Real estate attachable and all rights and interests therein, including the right to cut timber and grass, as described in chapter 507, subchapter III, rights of redeeming real estate mortgaged, rights to a conveyance of it by bond or contract, interests by virtue of possession and improvement of lands as described in chapters 723 and 725 and estates for a term of years, may be taken on execution and sold. . . ."
   14 M.R.S.A. § 4456 also speaks of attachment of rights and interests in real estate:
   "When a right to redeem real estate under mortgage, levy, sale on execution or for taxes or a right to a conveyance by contract is attached. . . ."

6. In Lambert v. Allard, 126 Me. 49, 52, 136 A. 121, 122 (1927) the Court amplified on this earlier statement saying that while as between the parties, the mortgagee is deemed the legal owner, as to third parties the law looks to the real nature of the transaction and finds the mortgagee, before foreclosure, to be only the holder of a pledge or lien. This distinction is not significant in the present case as this property was not levied upon until after the equity of redemption had expired.

██ The Justice was not in error in ruling that the Defendant acquired no legal interest of the debtor and conveyed nothing to the Plaintiff.

The question then becomes: Is the purchaser entitled to reimbursement from the creditor when it turns out that the property conveyed to him as that of the debtor was really owned by someone else?

██ It is fundamental in the law of sales that a sale takes place only when title passes from the seller to the purchaser for a consideration.[7] Furthermore, we have always held that a purchaser may rescind for a complete failure of consideration. Maxfield v. Jones, 76 Me. 135, 137 (1884). It is quite generally stated that the rule of caveat emptor applies to purchases at sheriffs' sales [8] and purchasers are often said to buy at their own risk and on the basis of their own judgment, in the absence of fraud or misrepresentation. 30 Am.Jur.2d Executions § 428 (1967); 33 C.J.S. Executions § 287 (1942). It appears to us, however, that most of the decisions which declare this rule recognize exceptions in two situations. It seems to be uniformly accepted that the purchaser is entitled to be returned to his former position if the sale fails to convey title because of defects in the proceedings. There is also strong support for the position that the purchaser is entitled to reimbursement where there proves to be a *complete failure of title*. 30 Am.Jur.2d Executions § 484 (1967); 33 C.J.S. Executions § 307a (1942), Annots., 142 A.L.R. 310, 312 (1943), 68 A.L.R. 659, 681 (1932). Acceptance of the latter view seems to be reflected in the few decisions in which our own Court has considered the situation.

In *Pillsbury v. Smyth*, 25 Me. 427 (1845) the creditor-plaintiff, who had levied on the debtor's interests in two lots of land, purchased the property himself at the sheriff's sale but failed to obtain any title to either lot because (1) the execution upon which one of the lots was seized was faulty and (2) the equity of redemption which he had attached as to the other lot had disappeared as a result of an earlier timely satisfaction of the mortgage indebtedness. The execution had been returned into court as *satisfied*, but the Court held that the creditor was entitled to a revival of his judgment. We note that the Court made no distinction between the failure of the Plaintiff to get title as a result of defective procedure as to one lot and the failure of the sheriff to levy upon an existing legal interest of the debtor as to the other. The Court said:

"The facts agreed, which are not objected to as inadmissible, show that the officer mistook the course of proceedings, and they were entirely without effect; the right of property was not transferred from the debtor to the creditor, who was the purchaser; nothing was received by the latter as the fruit of his judgment; it appears satisfied by the return from the proceeds of this sale for a large sum, whereas the creditor has received and can receive nothing." 25 Me. at 433.

In the course of its reasoning, the Court analogized the situation of the third party purchaser, which analogy, although dicta, is precisely our own case:

"If a purchaser, not the debtor but a stranger, of property sold in the ordinary mode upon execution, obtained nothing under the sale, for want of title in the debtor, payment in such case would, like other payments made in mistake, be without consideration, and could be recovered back; it would be gross injustice for a creditor and officer to expose for sale, goods which they had obtained by a trespass, and after sale and

---

7. 2 Blackstone, Commentaries 446; 11 M.R.S.A. § 2-106(1).

8. We express no opinion as to the applicability of the principle of caveat emptor to sheriffs'

██

sales of property which turn out to have qualitative defects or partial encumbrances but concern ourselves only with complete failure of consideration.

receipt of the purchase money throw upon the purchaser, the loss occasioned by recovery by the owner of his rights, in taking the property or compelling the buyer to pay its value; if the creditor be the purchaser, and obtained nothing, because no title existed in the debtor, this ceremony of sale cannot be satisfaction." 25 Me. at 432.

The issue was discussed again in two companion cases from Piscataquis County. The County of Piscataquis had sued the Town of Kingsbury and obtained a judgment. An execution issued authorizing the Plaintiff to levy upon the property of an *inhabitant* of the town. Instead, the sheriff levied upon the real estate of a nonresident, one Hayford, and sold the real estate to one Everett. Hayford sought to recover his land from the execution purchaser, Everett. Everett moved to amend the execution to make it run against *any* property in the town but the Court refused to allow the amendment, saying:

> "The amendment disallowed, none of the parties will suffer any considerable loss. The defendant can receive his money back. The original plaintiffs can renew their execution and proceed to collect it anew. In this result, the rights of all parties are substantially preserved." Hayford v. Everett, 68 Me. 505, 511 (1878).

The same rationale was used by the Court when the same dispute came back before the Court in Piscataquis v. Kingsbury, 73 Me. 326 (1882). The county had repaid the money to the purchaser, following the Court's suggestion in Hayford v. Everett, supra, and then brought an action to revive its judgment against the Town of Kingsbury. The town insisted that the rule of caveat emptor applies at sheriffs' sales and that the county had been under no obligation to return the purchase price. The Court disagreed holding:

> "[I]t was a case of money paid by common mistake and without consideration, and recoverable back." 73 Me. at 329.

In Dresser v. Kronberg, 108 Me. 423, 81 A. 487 (1911) the same issue arose in a case where the defendant mistakenly attached and levied on two horses as the property of the judgment debtor. Plaintiff purchased the horses at a sheriff's sale but was forced to relinquish them to the true owner. Plaintiff then sued defendant for the return of the purchase price. On appeal, this Court held that a purchaser for value of chattels at a sheriff's sale can recover from the judgment creditor when the chattels sold were not the property of the judgment debtor but of a third party. The Court considered that its earlier holdings in Pillsbury v. Smyth, supra, and Piscataquis v. Kingsbury, supra, supported this result and explained the reasoning underlying its latest decision:

> "It is further conceded that the plaintiff purchased the property in good faith, assuming as we think he had a right to assume, that it belonged to the judgment debtor and that he was securing a good title thereto. This proved to be a mistake in fact for the title absolutely failed. No consideration whatever passed to the plaintiff for the money which he paid through the hands of the sheriff into the pocket of the defendant. *The price paid does not belong to the defendant because the property sold did not belong to the judgment debtor, and a creditor cannot satisfy his execution against A by seizing the property of B. On the other hand, the money does belong to the plaintiff who parted with it without consideration.* Why should not the repayment by the party who is not entitled to it to the party to whom it belongs, be compelled by means of this legal process designed to meet just such cases? No one loses thereby. The true owner has recovered his property, the judgment debtor cannot have his debt paid with the property of another, and the judgment creditor, the defendant in this suit, after repayment, can obtain a new execution upon the judgment for the full amount by a writ of scire facias;
> . . . . A result which restores to each his own is equitable and therefore desirable." 108 Me. at 425, 81 A. at 487–488. (Emphasis added.)

Although the present issue has not been squarely before this Court in the case of sheriffs' sales of *real estate,* we are satisfied that the reasoning adopted in these related cases leads to a holding that the rule of caveat emptor does not apply to the purchase of real estate at a sheriff's sale where there has been a complete failure of title and that the purchaser may recover the payment from the judgment creditor. The judgment creditor's right is to reimburse himself from the property of the judgment debtor. The law does not intend to give him a windfall at the expense of the third party who assumes he is buying the property of the debtor and, instead, gets nothing. If—because he has attached and levied upon and sold property of someone other than the debtor—the creditor is required to return the payment to the purchaser, the creditor has lost nothing to which he was ever entitled. His execution remains unsatisfied and the property of the debtor is still subject to his attachment. All three parties—purchaser, creditor and debtor—are returned substantially to the positions they occupied before the invalid sale. This philosophy has prevailed throughout this Court's treatment of sheriff's sales.

We realize that a strong argument can be made that the rule of caveat emptor is more appropriate for sheriffs' sales of real estate than for sales of chattels, as the statute [9] makes the recording of instruments transferring interests in land constructive notice to all the world. And surely this particular Plaintiff had warning concerning the status of the title to this parcel which should have resulted in his further investigation. No doubt there is also analogy in deeds from municipalities of property acquired for delinquent taxes when the title attempted to be conveyed fails, in which situation the rule of caveat emptor is held to apply to the disappointed purchaser. Arnold v. City of Augusta, 118

Me. 399, 108 A. 332 (1919); Keyes v. State, 121 Me. 306, 117 A. 166 (1922). However, we perceive the presence of different policy considerations in the case of failure of such municipal and state conveyances. The application of caveat emptor in cases of failure of title in municipal tax deeds is probably largely ascribable to the early practice of selling tax-acquired property for the amount of unpaid taxes and costs under the condition that the assessed owner could redeem the property only by paying the purchaser the amount of the taxes plus costs plus 20% interest.[10] Packard v. Inhabitants of New Limerick, 34 Me. 266 (1852). Such transactions appear to have been regarded frankly as speculative deals in which the risks of getting a bad title were acceptable in view of the possible profits to be enjoyed if the title was good. The unsuccessful speculator was expected to accept the loss.

"To allow a person to purchase at such a sale, as he often may, a valuable estate for a trifling sum, and to take a deed from the collector without covenants of title, and to become the absolute owner of the estate, if the title thus acquired, should prove to be good, and if not good, to recover back the consideration paid, with interest, and thus to derive all possible advantage from the contingency, without being subjected in any event to a loss, would present a case anomalous as a business transaction, showing that it could not have been the intention of the parties." Treat v. Inhabitants of Orono, 26 Me. 217, 220 (1846).

As this Court said in Keyes v. State, supra, 121 Me. at 315, 117 A. at 171:

"[T]o stimulate interest in such sales it [the State] holds out the inducement of large profits."

The Court in *Keyes* had analyzed the reasoning of Packard v. Inhabitants of

---

9. 33 M.R.S.A. § 201.

10. This procedure, somewhat modified, is still available to the municipal tax collector. 36 M.R.S.A. §§ 1071–1084.

**548**

New Limerick, supra, 34 Me. at 269, where the Court had commented:

> "The lands sold not being the property of the town, it can derive no benefit from a failure of the title of the purchaser. If required to compensate the purchaser for his loss of title, it [the town] would lose the amount of the taxes assessed upon the lands, and the risk respecting the title would be shifted from the purchaser, who had been paid for assuming it, to the town, which might be subjected to numerous suits, and be unable to know the actual condition of its financial concerns."

On balance, we feel that when there has been a complete failure of title in a sheriff's sale, the better rule is that the purchaser is entitled to the return of his money from the judgment creditor.

The entry will be:

Appeal denied.

DUFRESNE, C. J., and WEBBER, J., did not sit.

All Justices concurring.