Lewellyn **DUPREY**

v.

**EAGLE LAKE WATER AND
SEWER DISTRICT and
Benjamin Ricciardi.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 9, 1992.
Decided Oct. 15, 1992.

Harold L. Stewart, II, Presque Isle, for plaintiff.

William J. Smith, Van Buren, for Eagle Lake.

Brent A. York, Currier & Trask, Presque Isle, for Ricciardi.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Lewellyn Duprey ("Duprey") appeals from a judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) concluding that the Eagle Lake Water & Sewer District ("Eagle Lake") may conduct a foreclosure sale of property on which it

held a sewer lien. On appeal, Duprey contends that the Superior Court erred in finding that the 18 month period of redemption set by state law[1] concerning Eagle Lake's mortgage was not tolled by the automatic stay provision of section 362(a) of the United States Bankruptcy Code.[2] We modify the judgment and as modified affirm.

In July of 1985, Duprey sold his restaurant (land and building) and all of the fixtures and personal property therein, to Davis and Wilma Bouchard, and received in return the Bouchards' promissory note secured by a mortgage. Mid January, 1988, the Bouchards vacated the property. Thereafter Duprey took possession of both the real and personal property and subsequently sold the personal property. This appeal concerns only the real property. On January 19, 1988, Eagle Lake recorded a Certificate of Lien against the real property for sewer bill arrearage stating Davis Bouchard to be the lessor/owner of the property. Copies of the lien certificate were mailed to the Bouchards and to Duprey.

On April 25, 1988, Davis Bouchard filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code, listing Duprey, and not Eagle Lake, as a creditor, and the restaurant as his property. On September 20, 1988, Bouchard received a discharge of his debts. On November 3, 1989, the Bankruptcy Court entered a trustee report of no assets and the case was subsequently closed on February 7, 1990. In early June, 1989, Bouchard and Duprey received copies of a notice of automatic foreclosure from Eagle Lake effective July 19, 1989. Subsequent to the expiration of the eighteen month redemption period, Eagle Lake solicited bids for the property; accepted Benjamin Ricciardi's bid; and conveyed the property to Ricciardi. Thereafter, on April 14, 1990, the Bouchards released any interest they may have had in the property to Ricciardi.

On December 21, 1990, Duprey initiated a Superior Court action against Eagle Lake and Ricciardi, seeking declaratory relief from the court that:

(1) the foreclosure notice and subsequent sale was invalid;

(2) he had a valid mortgage subordinate to that of Eagle Lake;

(3) he and Eagle Lake could commence foreclosure proceedings since the Bankruptcy Court had abandoned the property;

(4) Ricciardi had no valid interest in the property.

The Superior Court subsequently found in favor of Duprey to the extent that it declared the foreclosure sale of the property to Ricciardi invalid as a violation of the automatic stay provision of the United States Bankruptcy Code. However, the court also found that the 18 month period of redemption regarding Eagle Lake's mortgage was not tolled by the automatic stay and, therefore, expired on July 19, 1989, at which time title to the property automatically vested in Eagle Lake. The

---

1. 38 M.R.S.A. § 1208 sets forth the requirements for the foreclosure of a sewer lien:
   "If the mortgage, together with interest and costs shall not have been paid within 18 months after the date of filing [appropriate certification] in the Registry of Deeds as provided, the mortgage shall be deemed to have been foreclosed and the right of redemption to have expired...."
   38 M.R.S.A. § 1208 (1989).

2. Under the Bankruptcy Code, the filing of a bankruptcy petition stays:
   "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this

title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
   (2) the enforcement against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before commencement of the case under this title...."
   11 U.S.C.A. § 362(a) (1979 & Pamph.1992).

court then concluded that, since the bankruptcy case was closed, Eagle Lake was free to conduct a proper foreclosure sale of the property.

On appeal, Duprey contends that the Superior Court erroneously found that the automatic stay did not operate to toll or suspend the running of the statutory 18 month period of redemption on Eagle Lake's mortgage.

## I.

Under section 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate which "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (1979 & Pamph.1992). This section has been interpreted broadly and encompasses all interests of the debtor as of the date that the petition is filed including tangible property, intangible property and causes of action. 4 Collier on Bankruptcy ¶ 541.01 (15th ed. 1992).

▆▆▆ State law generally defines the property rights that are includable within the bankruptcy estate. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Jones*, 768 F.2d 923, 927 (7th Cir.1985); *In re Kwaak*, 42 B.R. 599 (Bankr.D.Me.1984); *In re Turner*, 29 B.R. 628 (Bankr.D.Me. 1983). Under Maine law, a mortgage on real property is a conditional conveyance with legal title vested in the mortgagee. *In re Roberts*, 26 B.R. 397 (Bankr.D.Me. 1983). The mortgagor retains only the right to possess the premises and the equity right of redemption. *Martel v. Bearce*, 311 A.2d 540, 543 (Me.1973). In the present case, Bouchard, as mortgagor, held an equitable right of redemption in the property. An equity of redemption comes within the scope of "all legal or equitable interests of the debtor in property" and as such becomes property of the estate. Collier, *supra*, at ¶ 541.07[3]. The redemption right was properly included as property of the estate. *See Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 276 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) ("[I]t is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time of [sic] the bankruptcy petition is filed.").

▆▆▆ On the breach of a condition of a mortgage, the mortgagee may foreclose the mortgage either by possession pursuant to 14 M.R.S.A. § 6201 or by civil action pursuant to 14 M.R.S.A. § 6321. Duprey, the mortgagee, did not commence formal proceedings under the civil action statute, nor did Duprey comply with any of the statutory requirements necessary to properly foreclose by possession.[3] As a result, the one year redemption period against Bouchard's equity of redemption interest never commenced and, of course, never expired. *See* 14 M.R.S.A. § 6202 (1980).[4] We conclude, therefore, that the Superior Court was correct in finding that the property was to be included in the bankruptcy estate.

## II.

▆▆▆ We must next consider the effect of the automatic stay on Eagle Lake's sewer lien. When Bouchard filed his bankruptcy petition, Eagle Lake held a valid lien against the property which had priority over Duprey's mortgage. Under Maine law, Eagle Lake's recording of a certificate

---

3. Foreclosure by possession requires the mortgagee to either (1) obtain a writ of possession; (2) enter into possession with the written consent of the mortgagor; (3) enter openly and peaceably, if not opposed, in the presence of two witnesses. 14 M.R.S.A. § 6201 (1980 & Supp.1991). The statute additionally provides that if the mortgagee takes possession by unopposed entry "[a] certificate of the fact and time of such entry shall be made, signed and sworn to by such witnesses before a notary public or an attorney-at-law. Such certificate shall be recorded in each registry of deeds in which the mortgage is or by law ought to be recorded, within 30 days after the entry is made."

4. The one year period of redemption is set forth in section 6202. "Possession obtained in either of these 3 modes and continued for one year forever forecloses the right of redemption." 14 M.R.S.A. § 6202 (1980).

in the registry of deeds enabled its sewer lien, from unpaid sewer use fees, to become a mortgage on the real property which was benefitted by the sewer. Specifically,

> There shall be a lien on real estate served or benefited (sic) by ... sewers.... The filing of [a] certificate in the registry of deeds shall be deemed to create ... a mortgage on the real estate therein described to the district which shall have priority over all other mortgages, liens, attachments and encumbrances of any nature, except liens, attachments and claims for taxes, and shall give the district all the rights usually possessed by mortgagees, except that the district as mortgagee shall not have any right to possession of said real estate until the right of redemption provided for shall have expired. If the mortgage, together with interest and costs, shall not have been paid within 18 months after the date of filing said certificate ... the mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.... In the event that said rate ... shall be paid within the period of redemption provided for, the treasurer of the district shall discharge the mortgage in the same manner as provided for discharge of real estate mortgages.

38 M.R.S.A. § 1208 (1989).

Eagle Lake filed its lien thereby creating a mortgage against the property on January 19, 1988, approximately three months prior to the filing of the bankruptcy petition. Under the statute, the 18 month period of redemption started to run on that date. Duprey asserts, however, that the automatic stay provision of section 362(a) operates to toll the running of the redemption period. The Superior Court found otherwise.

While this specific question has never been squarely before us, a number of other jurisdictions have considered this issue; two distinct views have developed. While some courts have held that the automatic stay does toll the running of any statutory redemption periods, the majority view, and the correct view in the opinion of one commentator, is that it does not. 2 Collier on Bankruptcy ¶ 352.04 (15th ed. 1992).[5]

Those courts adopting the majority view have concluded that the debtor's exclusive relief from the expiration of a statutory redemption period is found in the automatic sixty day extension of section 108(b). Collier, *supra*, at ¶ 362.04. Section 108(b) provides that if non-bankruptcy law fixes a time period within which the debtor may cure any default and that period has not expired before the date of the filing of the bankruptcy petition, "the trustee may only ... cure ... before the later of (1) the end of such period, including any suspension of such period, occurring on or after the commencement of the case; or (2) 60 days after the order for relief." 11 U.S.C.A. § 108(b) (Pamph.1992).[6]

In *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 275 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), the United States Court of Appeals for the Eighth Circuit noted that those courts which have consid-

---

**5.** *See Matter of Tynan*, 773 F.2d 177, 179–80 (7th Cir.1985) (stay does not toll running of Illinois statutory redemption period); *In re Glenn*, 760 F.2d 1428, 1440 (6th Cir.1985), *cert. denied Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) (stay does not toll running of statutory period for redeeming real estate sold at foreclosure sale); *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 276–78 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (stay does not toll running of Minnesota statutory redemption period); *In re Thom, Inc.*, 95 B.R. 261, 264 (Bankr.D.Me.1989) (stay does not toll running of Maine redemption period); *In re Farmer*, 81 B.R. 857, 859 (Bankr.E.D.Pa.1988) (for long list of cases in accord with view that automatic stay does not toll running of redemption periods). *But see In re Jenkins*, 19 B.R. 105 (Bankr.D.Colo.1982), *overruled by In re Cucumber Creek Dev., Inc.*, 33 B.R. 820 (Bankr.D.Colo. 1983) (adopting contrary view); *In re Sapphire Inv.*, 19 B.R. 492 (Bankr.D.Ariz.1982) (same); *In re Shea Realty, Inc.*, 21 B.R. 790 (Bankr.D.Vt. 1982) (same).

**6.** Under 11 U.S.C.A. § 301 (1979), the filing of a bankruptcy petition in a voluntary case constitutes the order for relief. Since, in the present case, at the time of the filing of the petition, Bouchard's redemption period still had over one year remaining, the 60 day extension provided by § 108(b) was of no benefit.

ered the effect of the automatic stay on statutory redemption periods have concluded that, on the filing of a petition, either section 362(a) or section 108(b) operate to stay the expiration of a statutory redemption period. *Id.* However, "the courts are in sharp disagreement ... as to which section is the fount of such authority, and as to the extent of the relief granted." *Id.* The court further noted that:

> One line of cases, anchored by *In re Jenkins,* 19 B.R. 105 (D.C.D.Colo.1982) and *In re Johnson,* 8 B.R. 371 (Bkrtcy. D.Minn.1981), stands for the proposition that the automatic stay provisions of § 362(a) should be liberally construed to suspend the running of a statutory period of redemption. Other decisions, holding to the contrary with respect to § 362(a), have instead found that § 108(b) is the sole applicable statute, and that its automatic extension of a redemption period provides the only relief available.

*Id.*

As a matter of comity, we will accept, so far as reasonably possible, a decision interpreting the Bankruptcy Code rendered by the Bankruptcy Court for the District of Maine. We adopt the reasoning of the Bankruptcy Court expressed in *In re Thom,* 95 B.R. 261, 262 (Bankr.D.Me.1989), wherein the United States Bankruptcy Court for the District of Maine considered whether the automatic stay operated to toll the running of the 90–day period of redemption after a judgment of foreclosure [7] and concluded that the express language of section 362 "does not stay the running of any time period." *Id.* at 263. Rather, "the effect of § 362 is to stay an entity from doing that which such entity has the power to do," for example, enforcing a judgment. *Id.*

The court found that section 108(b) also "does not stay the running of any time period but extends a time period." *Id.* Therefore, the court held that neither code

section operates to stay the expiration of a statutory redemption period. *Id.* at 263.

Although no pre-petition judgment of foreclosure was entered in this case, the period of redemption provided by state law commenced prior to the filing of the bankruptcy petition and continued to run notwithstanding the filing. Section 108(b) did not extend the statutory redemption period of the Eagle Lake mortgage. Bouchard's bankruptcy petition was filed almost 15 months prior to the expiration of the period of redemption. Consequently, the Superior Court was correct in concluding that the automatic stay does not operate to toll the 18 month period of redemption.

### III.

■ Bouchard's right to redeem the property expired on July 19, 1989, 18 months after Eagle Lake recorded its certificate of lien. *See* 38 M.R.S.A. § 1208 (1989). At that time, pursuant to section 1208, the "property [was] deemed to have been foreclosed." As a result, any interest of Bouchard in the property was extinguished and title to the property automatically vested in the mortgagee, Eagle Lake. *See Martel v. Bearce,* 311 A.2d 540, 543 (Me.1973). In *Martel* we noted:

> When that equity of redemption has been lost by the expiration of the statutory period, nothing remains in the mortgagor except the contingency that exceptional circumstances may exist which will entitle him to equitable relief. His legal title was conveyed when he executed the mortgage and his equitable title disappeared with the expiration of the period of redemption. *Smith v. Varney,* Me., 309 A.2d 229 (1973).

*Id.*

■ Furthermore, although the automatic stay is extremely broad in scope, *see In re Wallingford's Fruit House,* 30 B.R. 654 (Bankr.D.Me.1983), it does not prohibit the automatic transfer of property at the end of the 18 month redemption period. "Expiration of the redemption period which car-

---

7. The 90 day redemption period after a judgment of foreclosure is set forth in 14 M.R.S.A. § 6322 (Supp.1991).

ries with it an automatic transfer of property [is] neither an 'act or proceeding' nor enforcement of a right within the meaning of 11 U.S.C.S. § 362(a)." *See In re Smith,* 43 B.R. 313 (N.D.Ill.1984); *Johnson,* 719 F.2d at 276.

■ Contrary to the Superior Court's conclusion, the subsequent sale of the property was also not violative of the automatic stay. Under section 362(c)(1), the automatic stay of an act against property of the estate continues until such property is no longer property of the estate.[8] Since Bouchard no longer held any legal or equitable interest in the property after the expiration of the 18 month statutory period, the property could no longer be classified as property of the estate. His rights in the property were forever extinguished. *See St. Hilaire v. Berta,* 588 A.2d 309, 310 (Me.1991) (upon expiration of redemption period mortgagors no longer had any property to sell); *see also* Cummings, *Grinding Gears: Meshing Maine Mortgage Foreclosure Law and the Bankruptcy Code,* 44 Me. L.Rev. 64, 85-6 (1992) (discussing extent of debtor's rights after expiration of statutory redemption period). Eagle Lake was free to conduct its sale of the property on October 25, 1989.[9]

It cannot be said that Bouchard held any rights in the property after the 18 month period expired. Further, the Bouchards did not have rights in any possible surplus from the sale proceeds. Unlike the statutory provisions governing foreclosure by civil action, the sewer lien statute does not authorize the distribution to the debtor of any surplus received from the proceeds of a sale after the foreclosure of a sewer lien.[10] Therefore, since Bouchard no longer held any legal or equitable interest, the property

subject to Eagle Lake's mortgage no longer constituted "property of the estate" and the automatic stay should not have been invoked by the Superior Court to preclude the sale to Ricciardi. The decision of the Superior Court is inconsistent in that although the court held that Eagle Lake's equity of redemption expired on July 19, 1989 and that title automatically vested in the mortgagee, the court nonetheless required Eagle Lake to conduct another sale of the property. Eagle Lake held valid title on July 19, 1989 and was free to sell the property any time thereafter.

The entry is:

Judgment modified to declare that the foreclosure and notice by Eagle Lake Water and Sewer District and its sale to Benjamin Ricciardi are valid and, as so modified, affirmed.

All concurring.

---

**8.** Section 362(c)(1) specifically provides that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate." 11 U.S.C.A. § 362(c)(1) (1979).

**9.** In addition to arguing that the sale itself violated the stay, Duprey also asserts that the notice of foreclosure sent by Eagle Lake was both defective (due to incorrect references to the page numbers in the registry of deeds) and in violation of the automatic stay. Even if this

Court accepted Duprey's contention, the result would not change. Under the sewer lien statute, notice of automatic foreclosure is not required. Therefore, any infirmity in said notice is irrelevant to the questions presented on this appeal.

**10.** In contrast, the civil action statute provides: "Any surplus shall be paid to the mortgagor, his successors, heirs or assigns in the proceeding." 14 M.R.S.A. § 6324 (Supp.1991).