In the Matter of SOUTHWEST FREIGHT LINES, INC., Debtor.

Henry W. GREEN, Trustee for Southwest Freight Lines, Inc., Plaintiff,

v.

LOWES, INC., McNeil Consumer Products Co., Glazer Wholesale Drug Company, Inc., Sidermex International, Inc., f/k/a AHMSA Steel, Stouffer Foods, Inc., Hyplains Dressed Beef, Inc., Pioneer Steel & Tube Distributors, Inc., Georgia Pacific Corporation, Trinity Metals, Conagra, Inc., Safeway Stores Incorporated, Surbey Feed, Inc., Defendants.

Bankruptcy No. 85–20334.
Adv. No. 87–0150.
Civ. A. Nos. 88–2120–0 to 88–2127–0, 88–2133–0, 88–2134–0, 88–2210–0 and 88–2241–0.

United States District Court, D. Kansas.

May 25, 1989.

James B. Frakie, Day, Sawdey, Flaggert & Porter, Grand Rapids, Mich., for debtor.

Henry W. Green, Southwest Freight Lines, Inc., Leavenworth, Kan., trustee.

Linda Kay Knight, Kansas City, Mo., Thomas M. Mullinix, Kansas City, Kan., for creditors.

Jerald I. Ancel, Marlene Reich, Ancel, Miroff & Frank, Robert B. Hebert, Robert M. Baker, III, Miller, Faires, Hebert & Woddell, Indianapolis, Ind., R. Pete Smith, McDowell, Rice & Smith, Kansas City, Kan. for Lowes, Inc.

Daniel J. Sweeney, McCarthy, Sweeney & Harkaway, Washington, D.C., Dennis R. Dow, Shook, Hardy & Bacon, Kansas City, Mo., Tim O'Brien, Shook, Hardy & Bacon, Overland Park, Kan., for McNeil Consumer Products Co.

Paul J. Chitwood, Richard N. Currin, Dallas, Tex., Dale E. Bennett, Overland Park, Kan., James E. Bird, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for Glazer Wholesale Drug Co., Inc.

Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for Sidermex Intern., Inc., Stouffer Foods, Inc., Pioneer Steel & Tube Distributors, Inc.

David J. Rebein, Mangan, Dalton, Trenkle Rebein & Doll, Dodge City, Kan., Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.C., Kansas City, Kan., for Hyplains Dressed Beef, Inc.

Darry Gene Sands, Kansas City, Mo., for Georgia Pacific Corp.

Richard M. Torack, St. Louis, Mo., William D. Mize, Deacy & Deacy, Overland Park, Kan., for Trinity Metals.

Robert S. Lannin, Boddington and Brown, Kansas City, Kan., Gary F. Wence, McGrath, Worth, O'Malley & Krantz, P.C., Omaha, Neb., for Conagra, Inc.

Richard N. Bien, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., Robert D. Benham, McAnany, Van Cleave & Phillips, Kansas City, Kan., for Safeway Stores, Inc., Surbey Feed, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

These are appeals by Henry W. Green, Trustee of Southwest Freight Lines, Inc. ("Trustee") from orders of the bankruptcy court dismissing various adversary proceedings for lack of jurisdiction and standing. We affirm.

█ Our standard of review in bankruptcy appeals is clear. The bankruptcy courts' legal conclusions are subject to *de novo* review by the district court and the court of appeals. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987). However, the district court is bound by the factual findings of the bankruptcy court unless they are clearly erroneous. *In re Herd,* 840 F.2d 757, 759 (10th Cir.1988). Thus, the factual findings of the bankruptcy judge should not be disturbed absent the most cogent reasons appearing in the record. *In re Reid,* 757 F.2d 230, 233–34 (10th Cir.1985).

Under the clearly erroneous standard, reversal is required only if the court's review of the record leaves it with a definite and firm conviction that a mistake was made. *Amoco Prod. Co. v. Western Slope Gas Co.*, 754 F.2d 303, 309 (10th Cir.1985).

The relevant facts in this case may be briefly summarized. Pursuant to a Loan and Security Agreement ("Agreement") executed on February 2, 1983, debtor Southwest Freight Lines, Inc. ("Southwest") gave National Acceptance Company of America, Inc. ("NAC") a security interest in, and the right to collect, Southwest's accounts receivable. The Agreement provided, in part, as follows:

4.5 Borrower shall receive, as the sole and exclusive property of Lender and as trustee for Lender, all monies, checks, notes, drafts and all other payment for and/or proceeds of Collateral which come into the possession or under the control of Borrower....

4.6 Lender, now or at any time or times hereafter, in its sole and absolute discretion, may endorse Borrower's name to any of the items of payment or proceeds described in Paragraph 4.5 above which come into Lender's possession or under Lender's control and, pursuant to the provisions of this Agreement, Lender shall apply the same to and on account of Borrower's Liabilities. For the purposes of this Paragraph, Borrower, irrevocably, hereby makes, constitutes and appoints Lender.... as Borrower's true and lawful attorney (and agent-in-fact) to endorse Borrower's name to said items of payment and/or proceeds.

\*　\*　\*　\*　\*　\*

4.8 Immediately upon Borrower's receipt of that portion of the Collateral evidenced by an agreement, instrument and/or document ("Special Collateral") Borrower shall deliver the original thereof to Lender, together with appropriate endorsement and/or other specific evidence of assignment (in form and substance acceptable to Lender) thereof to Lender.

\*　\*　\*　\*　\*　\*

5.6 ... Lender, now and at time or times hereafter, in its sole and absolute discretion, without notice thereof to Borrower, may notify any or all Obligors that the Accounts and Special Collateral have been assigned to Lender and that Lender has a security interest therein and Lender may direct such Obligors thereafter to make all payments due from them to Borrower upon the Accounts and Special Collateral: (a) directly to Lender; or (b) indirectly to a lock box established by Lender in Lender's name or otherwise.

Loan and Security Agreement of February 2, 1983. In addition, NAC was given broad powers to enforce its rights under these provisions. *See* Agreement, ¶¶ 8.6, 8.7.

Southwest surrendered.possession of its accounts receivable to NAC prior to the initiation of the bankruptcy proceedings. Stipulation for Relief from Stay, ¶ 3. NAC thereafter engaged Carrier Credit & Collection, Inc. to collect these monies. The bankruptcy petition was filed on April 10, 1985, and on April 2, 1986, the Trustee and counsel for NAC entered into a "Stipulation for Relief from Stay" stating, *inter alia,*

7. That NAC is informed and believes that there is no equity in the accounts receivable which could be used to satisfy the claims of the Debtor's unsecured or priority creditors.

8. That NAC asserts that the Debtor's outstanding accounts receivable are not necessary for the Debtor's reorganization.

9. That based upon the foregoing, NAC and the Trustee agree that the Stay imposed by 11 USC 362 [sic] be lifted to the extent necessary to allow NAC to continue its collection efforts.

10. That NAC may apply the net proceeds derived from its collection efforts to the Debtor's outstanding balance due.

The bankruptcy court approved this stipulation and lifted the automatic stay, "to the extent necessary to allow National Acceptance Company of America to continue to collect the outstanding accounts receivable of Southwest Freight Lines, Inc., debtor

herein." Order Approving Stipulation and Granting Relief from Stay, April 2, 1986, pp. 1–2.

On June 18, 1987, the Trustee initiated adversary proceedings on behalf of Southwest to collect the accounts receivable. Defendant-appellees moved to dismiss on the basis that the bankruptcy court lacked subject matter jurisdiction over the accounts and that the Trustee therefore lacked standing to maintain his action. By order of November 18, 1987, the bankruptcy court granted these motions and the Trustee appeals.

■ The central issue in these appeals is whether Southwest's accounts receivable were property of the estate at the time the bankruptcy proceedings commenced. Federal law provides the general framework for determining what constitutes property of the bankruptcy estate. 11 U.S.C. § 541. Whether the estate has any legal interest in specific property, however, is a question of state law. *In re Nat'l Equip. & Mold Corp.*, 64 B.R. 239, 245 (Bkrtcy.N.D.Ohio 1986) (citing cases). Paragraph 1.16 of the Agreement provides that it shall be governed by the laws of Illinois. Accordingly, the court must determine what, if any, legal interest the debtor retained in the property at issue by reference to that state's law.[1]

The Trustee cites *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bkrtcy.W. D.Ky.1982) for the proposition that accounts receivable, when assigned to secure a loan, remain property of the debtor's bankruptcy estate. Standing alone, this statement is undoubtedly correct. However, when presented with evidence that the debtor retains no legally-cognizable interest whatsoever in the accounts, the court must go beyond the mere fact of assignment and examine the extent of the interest actually retained by the debtor. As the court stated in *National Equipment*,

> If a debtor created a contract with a creditor regarding the use of accounts receivable as security, then the terms of that contract would determine whether or not the debtor retained any interest in the accounts which would pass to the estate upon the filing of a Title 11 petition.

*In re Nat'l Equip. & Mold Corp.*, 64 B.R. at 245.

In the case at bar, the above-quoted Agreement lends itself to the same interpretation given the documents at issue in *National Equipment:*

> A review of the security agreement appears to reflect that the parties intended for the Debtor to convey ownership of its accounts receivable to the Defendant. Although not expressed in language which is customarily employed in a conveyance of title, the security agreement states that "The proceeds of all collections of the Receivables shall be the absolute property of the Bank, and they shall not be deposited or mingled with any other moneys [sic] or funds of the (Debtor)." This language appears consistent with the intent of the parties to create an arrangement, in which Defendant could be assured of repayment from the Debtor's accounts. This language clearly favors a finding that the Debtor intended to convey or assign its rights in the accounts to the Defendant for this purpose. This interpretation is supported by the remaining terms of the contract, wherein the Defendant is afforded the right to collect the accounts directly from the account obligors without having to route the collection process through the Debtor. It is also supported by the fact that the Defendant was empowered to endorse the name of the Debtor on any check or bills submitted by the account debtors as payment on the account. Such terms so clearly express the intent of the parties that there is no reasonable or rational interpretation which can be used to assert that the Debtor intended to retain any rights in the accounts subsequent to its execution of the contract. In the absence of any such rights, it must be concluded that the

---

1. The Trustee does not cite, and the court has not discovered, any Illinois law that would suggest that the Agreement should not be enforced according to the presumed intentions of the parties.

Debtor had no interest in the accounts which passed to the estate with the filing of the petition.

*Id.* Contrary to the Trustee's assertions, the court holds that *National Equipment* is merely a logical exception to the general principle enunciated in *Hurricane Elkhorn* and not inconsistent with it. Indeed, that the latter case is distinguishable on its facts from both *National Equipment* and the case at bar flows from the court's observation that, "[e]xcept for its possessory interest, Hurricane Elkhorn retained the interest any debtor retains in property it gives as security for a debt." *Hurricane Elkhorn,* 19 B.R. at 617. Here, the Trustee can point to no interest retained by Southwest in its accounts receivable. Therefore, the court holds that accounts receivable were never property of the bankruptcy estate, in light both of the Agreement and of the subsequent surrender by Southwest of the subject accounts. Accordingly, the court below was correct in holding that it lacked subject matter jurisdiction over the accounts and that the Trustee lacked standing to bring the adversary proceedings.[2]

IT IS THEREFORE ORDERED that the order of the bankruptcy court is affirmed.

---

**2.** In view of our holding on these issues, we need not reach the question of the effect of the Stipulation on the bankruptcy court's jurisdiction. Similarly, defendant-appellee Trinity Metal Products, Inc.'s motion to dismiss the appeal is moot and hereby denied.