In re Dennis E. CORMIER and
Cheryl A. Cormier, Debtors.

Bankruptcy No. 92–20724.

United States Bankruptcy Court,
D. Maine.

Nov. 5, 1992.

Dennis E. Cormier and Cheryl A. Cormier, pro se.

Mary Ellen Rogers, Verrill & Dana, Portland, Me., for Lomas Mortg. USA, Inc.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

On July 6, 1992, Dennis and Cheryl Cormier filed this Chapter 13 case. At the time, however, they were Chapter 13 debtors in another case pending before this court, Case No. 88–20306. The earlier-filed Chapter 13 proceeding was subsequently dismissed at the Cormiers' request. Lomas Mortgage USA, Inc. ("Lomas"), has moved to dismiss this case as a bad faith filing. In the alternative, Lomas seeks relief from stay so that it may complete foreclosure on the Cormiers' residential real estate.

After considering submissions and argument from both parties and from the Chapter 13 trustee, I conclude that, although it is likely that this case would be dismissed after further hearings, relief from stay should issue now as a matter of law.[1]

### I. BACKGROUND [2]

◼ The Cormiers granted a mortgage on their Acton, Maine, residence to Lomas' predecessor in interest on November 15, 1985.[3] After they defaulted, Lomas initiated a state-court foreclosure action on August 17, 1988. The Cormiers invoked Chapter 13 protection by filing Case No. 88–20306 on September 13, 1988. Their Chapter 13 plan, as confirmed on October 13, 1989, called for curing pre-petition mortgage arrearages within the plan and

---

1. This memorandum constitutes findings of fact and conclusions of law as required by F.R.Bankr.P. 7052 and 9014. All references to statutory sections, to the "Bankruptcy Code" or to the "Code" are to the Bankruptcy Reform Act of 1978, as amended, codified at 11 U.S.C. 101 *et seq.* (1992).

2. The material facts of the case are not in dispute. They are drawn from the submissions of the parties, including the uncontroverted allegations in Lomas' motion seeking dismissal or relief from stay. At hearings, Mrs. Cormier alleged that she and her husband had valid defenses to Lomas' action on the promissory note secured by the residential mortgage. However, the note and mortgage are the basis for a valid, final state court judgment. Such defenses

as may once have existed are now foreclosed. An extensive package of materials was filed by the Cormiers well after the briefing period closed. It has been accepted and considered nonetheless. It contains nothing that would change today's decision.

3. The mortgage originally issued in favor of Comfed Mortgage Co. Comfed Mortgage assigned the mortgage to Comfed Savings Bank on November 15, 1985. The Resolution Trust Corp. ("RTC") was appointed as conservator for Comfed Bank on December 14, 1990, and as receiver for the bank on September 13, 1991. RTC, in turn, assigned the mortgage to Lomas on November 27, 1991. That Lomas is the valid assignee is not disputed.

for paying mortgage installments as they came due "outside the plan." [4]

The Cormiers failed to remain current on their mortgage obligation, and Lomas' predecessor moved for relief from stay. On June 18, 1990, the court entered a consent order providing for cure of both pre- and post-petition arrearages within a modified plan.[5] The order also established that, should the debtors miss *any* payments, the mortgagee was granted relief from stay without further hearing. The Cormiers again defaulted.

Lomas' predecessor filed a second state-court foreclosure action on May 13, 1991.[6] The state court entered summary judgment of foreclosure and sale on February 6, 1992.[7] Maine's statutory, ninety-day, pre-sale redemption period [8] expired on May 6, 1992.[9]

The Cormiers filed their second Chapter 13 petition *pro se* on July 6, 1992, commencing this case. On July 16th, they requested that the court "release" the first Chapter 13 case. Case No. 88–20306 was closed immediately after entry of the final decree on August 17, 1992.

On August 26, 1992, Lomas filed its alternative motions seeking dismissal or relief from stay.[10] Hearings were held on September 18, 1992, and, at the request of the parties, supplementary briefs were filed thereafter.

## II. MOTION TO DISMISS

### A. *Section 109(g) and Simultaneous Cases*

Lomas argues that the debtors are barred from filing their second Chapter 13 case by section 109(g) of the Bankruptcy Code, which provides, in pertinent part:

[N]o individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding one hundred and eighty days if—

\*       \*       \*       \*       \*       \*

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

Because the Cormiers' first case had not yet been dismissed when their second case

---

**4.** A Chapter 13 plan generally calls for the debtor to make payments to the Chapter 13 trustee, who in turn disburses money to creditors. *See* §§ 1322(a)(1) and 1326(a). In some circumstances, a debtor may be permitted to make 'payments outside the plan,' i.e. directly to the creditor. "[W]here a fully secured mortgage claim is not treated under the provisions of § 1322(b)(5), or any other provisions of Chapter 13, payments on that claim need not be made under the plan." *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 489 (5th Cir.1982). Some courts have opined that payments outside the plan jeopardize the purpose of Chapter 13, i.e., "[T]o enable an individual under court supervision and protection to develop and perform under a plan for repayment ..." H.Rep. 95–595, 1978 U.S.C.C.A.N. 5787 at 6079. *See In re Gaskin*, 79 B.R. 388 (Bankr.C.D.Ill.1987); *In re Perez*, 20 B.R. 879 (Bankr.E.D.N.Y.1982).

**5.** The debtors remained obligated to make prospective payments, as they came due, directly to the mortgagee.

**6.** There is no dispute that the debtors defaulted on their payment obligations and that, under the terms of the consent order, the mortgagee had relief from the stay to proceed in state court. *See* Exhibits H and I to Lomas Motion.

The Cormiers make no claim that the action was initiated in violation of the stay.

**7.** Exhibit B to Lomas' Motion is the Judgment for Foreclosure and Sale in York County Superior Court case no. CV–91–361,. *Lomas Mortgage USA, Inc., v. Dennis E. Cormier and Cheryl A. Cormier.* The judgment is dated February 6, 1992.

**8.** *See* n. 21 *infra*.

**9.** On July 1, 1992, the state court entered an order amending the judgment of foreclosure to correct mistaken recording information. The change was purely technical and, by the order's express terms, did not affect the running of the redemption period. Exhibit O to Lomas' Motion. There is no dispute on this score.

**10.** Lomas initially sought emergency, *ex parte*, relief from the stay so that it could conduct a foreclosure sale scheduled to take place on August 26, 1992. The motion was brought on for telephonic hearing immediately. However, Lomas' counsel acknowledged that, as of the hearing, the appointed hour of sale had passed. Accordingly, the motion came on for hearing in the ordinary course.

was filed, § 109(g) does not, by its letter, apply. Nevertheless, Lomas reads § 109(g) to mean that 'being a debtor' means 'being allowed to continue a bankruptcy case.' Thus, it urges that, once the 1988 case was dismissed, the Cormiers could no longer carry on their 1992 case. This is a novel reading; indeed, Lomas offers no authority for the proposition.[11]

An equally plausible reading of the statute is that 'being a debtor' means 'being allowed to initiate a bankruptcy case.' A review of § 109(g)'s legislative history [12] makes it clear that the latter view reflects Congress's intent. The pertinent Senate Report states, "The sections as amended will prohibit any party from *filing a petition* who, within the previous six months, has had a previous petition dismissed ... upon voluntary motion for dismissal." S.Rep. 98–65 at 74 (98th Cong., 1st Sess.) (1983) (emphasis added).[13] In any event, an extended discussion of semantics is unnecessary. Given that Lomas seeks dismissal to benefit from § 362(c)(2)(B),[14] I let the issue pass. Relief from stay will issue on other grounds.

### B. *Simultaneous Bankruptcies as Bad Faith Per Se*

More than one court has held that a debtor simply cannot have two cases pending before the bankruptcy courts. *In re Valparaiso Motel Corp.*, 125 B.R. 228 (Bankr.N.D.Ind.1990) (collecting cases); *In re Bodine*, 113 B.R. 134 (Bankr.W.D.N.Y. 1990) (collecting cases); *In re Fulks*, 93 B.R. 274 (Bankr.M.D.Fla.1988); *In re Smith*, 85 B.R. 872 (Bankr.W.D.Okla.1988);

*Appleton v. Belmore (In re Belmore),* 68 B.R. 889 (Bankr.M.D.Pa.1987). *See also, Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (Act case).

Although filing a petition while a prior case remains open is an indication of bad faith, I decline to adopt a *per se* rule. The proper approach is to consider whether there has been a change in circumstances between the first and second petitions sufficient to warrant a finding of good faith. *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1437 (11th Cir. 1989); *In re Kosenka*, 104 B.R. 40 (Bankr. N.D.Ind.1989); *In re Strause*, 97 B.R. 22 (S.D.Ca.1989) (collecting cases); *In re Ghosh*, 38 B.R. 600 (Bankr.E.D.N.Y.1984); *In re Bumpass*, 28 B.R. 597 (Bankr. S.D.N.Y.1983); *In re Tauscher*, 26 B.R. 99 (Bankr.E.D.Wisc.1982). *See also In re Grimes*, 117 B.R. 531 (9th Cir.BAP 1990). Debtors may experience a change of fortune permitting funding of a restructuring plan even before a prior case is closed. Further, bankruptcy cases may remain open, yet wholly inactive, for months or years.[15]

A motion to dismiss for bad faith filing requires consideration of all relevant circumstances. The status of a previous case as technically 'open' or 'closed' is one factor, but it is not necessarily dispositive.[16]

### C. *Need for Hearing*

At the preliminary hearing on these motions, the parties offered to prove facts pertinent to the bad faith filing issues. Although the Code does not dictate it, in my

---

**11.** At least one court has concluded that § 109, coupled with § 105, bars simultaneous bankruptcy cases. *In re Dyke*, 58 B.R. 714, 717 (Bankr.N.D.Ill.1986).

**12.** Section 109(g) was first enacted in 1984 as § 109(f).

**13.** S.Rep. 98–65 accompanied S. 98–445, the Omnibus Bankruptcy Improvements Act of 1983. S. 98–445 was a forerunner of the Pub.L. No. 98–353, the Bankruptcy Amendments and Federal Judgeship Act of 1984.

**14.** Sec. 362(c)(2)(B) provides that the automatic stay expires upon dismissal of the case.

**15.** The court notes this relatively rare and unfortunate possibility without in any way expressing its approval. *See* §§ 704(9), 1106(a)(1), and 1302(b).

**16.** Cases dealing with serial filings, e.g. *Johnson v. Home State Bank*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), are not squarely on point. In *Johnson*, the Supreme Court held that "Chapter 20" filings were permissible if made in good faith. However, *Johnson* focusses on serial filings, and does not take up the matter of simultaneous cases. 111 S.Ct. at 2156. Some serial filings are addressed by the language of the Code. *See* § 109(g).

view the circumstances of this case would require an evidentiary hearing.[17] *See Noreen v. Slattengren (In re Noreen)*, 974 F.2d 75 (8th Cir.1992) (evidentiary hearing to determine good faith issues in Chapter 13 is discretionary).

Lomas' motion for relief from stay is ripe for decision on the present record. Accordingly, it is unnecessary to take evidence to resolve the question of bad faith filing.

## III. RELIEF FROM STAY

### A. *Maine Law Defines the Debtors' Property Rights*

■ The Bankruptcy Code does not provide debtors any greater rights in real property than they hold under state law at the time that they file their petition. "Federal law provides the general framework for determining what constitutes property of the bankruptcy estate. 11 U.S.C. § 541." *In re Southwest Freight Lines, Inc.*, 100 B.R. 551, 554 (D.Kan.1989). "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979).[18] The Code neither creates nor enhances property rights. *In re Gull Air, Inc.*, 890 F.2d 1255, 1261 (1st Cir.1989). *See In re Jones*, 768 F.2d 923, 927 (7th Cir.1985) (Code does not provide the decisional rules for deciding whether a debtor holds an interest in property); *In re Turner*, 29 B.R. 628, 630 (Bankr.D.Me. 1983) (*citing* Lawrence King, 4 *Collier on Bankruptcy* ¶ 541.02[1] (15th ed. 1982)).

■ Thus, the nature and extent of a debtor's interest in specific property are determined by state law. *See In re Southwest Freight Lines, Inc.*, 100 B.R. at 554; *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 293 (Bankr. D.Mass.1988); *In re Kwaak*, 42 B.R. 599, 601 (Bankr.D.Me.1984); *In re Turner*, 29 B.R. at 630. *See also In re Pinetree, Ltd.*, 876 F.2d 34, 36 (5th Cir.1989); *In re Jones*, 768 F.2d at 927. The Bankruptcy Code operates upon the state law property rights that debtors bring with them into bankruptcy, and upon property recovered via the trustee's avoidance powers. Thus, before this court can consider what rights the Cormiers retain in the face of Lomas's state court foreclosure judgment, it must examine Maine foreclosure law.

### B. *Maine Foreclosure Law and the Right to Redeem*

The principal method of foreclosing real property mortgages in Maine is judicial foreclosure under Title 14 of the Maine Revised Statutes. *See* Caspar F. Cowan, 1 *Maine Practice—Real Estate Law and Practice* § 505 at 412 (West 1990 and Supp. 1992) (hereinafter "Cowan"); Kathleen Barry, Comment, *The Constitutionality of Maine's Real Estate Foreclosure Statutes*, 32 Me.L.Rev. 147, 152 (1980).[19] Lomas has employed it here. The judicial foreclosure action is initiated via summons and complaint.[20] Entry of the judgment of foreclosure initiates a ninety-day statutory redemption period during which the mortgagor may redeem the property by paying off the note.[21]

---

**17.** This case is one with unusual characteristics anent the bad faith question. The debtors are now *pro se*. They attribute many of their current difficulties to the course and quality of their prior legal representation.

**18.** *Butner* addressed issues arising under the Bankruptcy Act of 1898. Its teaching remains valid under the Code. *See Barnhill v. Johnson*, — U.S. —, 112 S.Ct. 1386, 1390, 118 L.Ed.2d 39 (1992); *In re Public Service Co. of N.H.*, 884 F.2d 11, 14 (1st Cir.1979).

**19.** Maine law provides for three methods of foreclosure: Judicial foreclosure, strict foreclosure and private sale foreclosure. (The last is only available on business property owned by

structured businesses.) For a review of Maine foreclosure law, *see* Daniel L. Cummings, *Grinding Gears: Meshing Maine Mortgage Law and the Bankruptcy Code*, 44 Me.L.Rev. 63, 66–69 (1992).

**20.** 14 M.R.S.A. § 6321.

**21.** 14 M.R.S.A. § 6322 states, "On mortgages executed on or after October 1, 1975, the period of redemption shall be 90 days from the date of the judgment." For a general discussion of statutory and equitable redemption rights, *see* Basil Jones, 5 *Tiffany on the Law of Real Property* § 1530 at 603 (3d ed. 1939 and Supp.1992) (hereinafter "Tiffany").

Maine is a 'title theory' state—a mortgagee holds legal title to the property, and the mortgagor retains only the "right to possess the premises and the equity right of redemption." *Duprey v. Eagle Lake Water & Sewer Dist.*, 615 A.2d 600, 602 (Me.1992). *See Mitchell v. Burnham*, 44 Me. 286, 299–302 (1857); Cowan, § 441 at 350–51. After the statutory redemption period expires, the mortgagor's interest in the real property is "forever extinguished." *Duprey v. Eagle Lake Water & Sewer Dist.*, 615 A.2d at 605. *See Martel v. Bearce*, 311 A.2d 540, 543 (Me.1973).[22] *See also Smith v. Varney*, 309 A.2d 229, 232 (Me.1973). The mortgagor has a right to surplus proceeds, if any, from the foreclosure sale. *See* 14 M.R.S.A. § 6204–B(2). That right, like other rights which may endure beyond the redemption period's expiration, is not an interest in the real property. It is properly characterized a chose in action.[23] Expiration of the statutory redemption period eliminates all of the debt-ors' rights in the real property, including the right to continued possession.[24]

Within ninety days after the redemption period expires, the mortgagee must begin to publish notices of the foreclosure sale.[25] The notices must be published once a week for three successive weeks.[26] The property must then be sold at public sale and any surplus returned to the mortgagor.[27] To be entitled to a deficiency judgment, the mortgagee must file with the court a report of sale, accounting for distribution of the sale proceeds.[28]

Thus, unlike those of many other states, Maine's judicial foreclosure statutes provide for pre-sale redemption and for deficiency judgments.[29]

## C. The Maine Bankruptcy Cases

The intersection between Maine foreclosure law and the Bankruptcy Code has

22. *Duprey* and *Martel* each address statutory liens (the former for sewer assessments, the latter for taxes). Under Maine law the filing of such liens creates a mortgage against the subject property. *Duprey*, at 603; *Martel*, 311 A.2d at 543. Although the redemption periods vary from those that apply in judicial foreclosure proceedings, the relative rights of mortgagor and mortgagee regarding redemption are, in substance, identical. *See Duprey*, at 605.

23. *Martel* holds that the rights which might remain with a mortgagor after the redemption period expires are not attachable interests in real estate. Maine's Supreme Judicial Court explained:
   While it is abundantly clear that a right to redeem *is*, by statute, a right and interest in real estate and attachable, this former owner's right to redeem had been extinguished. There remained ... only the contingent right to attempt to demonstrate by legal action that the estate's lost interest in the property should be restored.
   *Martel v. Bearce*, 311 A.2d at 544 (emphasis in original). The court recognized that, although such a "right" might have value, or at least nuisance value, it "is more a chose in action than an interest in land...." *Id. See also Duprey*, at 605.

24. 14 M.R.S.A. § 6323 provides, in pertinent part: "Upon expiration of the period of redemption, if the mortgagor, his successors, heirs or assigns have not redeemed the mortgage, any remaining rights of the mortgagor to possession shall terminate...."

25. 14 M.R.S.A. § 6323.

26. *Id.*

27. 14 M.R.S.A. § 6204–B.

28. 14 M.R.S.A. § 6324. The particularities of the report are not specified. However, the deficiency is presumably computed by subtracting the mortgage and costs of sale, per 14 M.R.S.A. § 6204–B, from the foreclosure sale price. *See,* Cowan §§ 506 and 518. If the mortgagee purchases the property, the deficiency is limited to "the difference between the fair market value of the premises at the time of the public sale, as established by an independent appraisal, and the sum due the mortgagee as established by the court...." 14 M.R.S.A. § 6324.

29. Many states have post-sale redemption periods. Tiffany notes law to that effect in the states of Alabama, Arkansas, California, Illinois, Iowa, Minnesota and Wisconsin. Tiffany, § 1530 at 603. A number of states, including California, Louisiana, North Dakota and Oregon, have restricted or, in some circumstances, eliminated deficiency judgments. *See* 55 *Am. Jur.2d Mortgages* § 918 (1971 & Supp.1991) (collecting cases). *See also Angel v. Bullington*, 330 U.S. 183, 185, 67 S.Ct. 657, 658, 91 L.Ed. 832 (1946) (North Carolina law). *But see Peoples Sav. Bank v. Spencer*, 482 A.2d 832, 833–34 (Me.1984) (discussing deficiency judgments and statutory prerequisites).

been mapped in several earlier decisions, only two of which are published.

In *U.S. v. Thom, Inc. (In re Thom)*, 95 B.R. 261 (Bankr.D.Me.1989), the court considered whether § 362(a)'s automatic stay tolls the running of the ninety-day redemption period. It held that the automatic stay applied to acts, but not to the running of the clock. 95 B.R. at 263; *accord, Clark v. Valley Fed. Sav. & Loan Ass'n (In re Reliance Equities, Inc.)*, 966 F.2d 1338, 1342 (10th Cir.1992) (stay does not toll expiration of temporary perfection of security interest under Colo.U.C.C. § 4–9–306(3)).[30] *Thom* recognized that § 108 provides a potential extension of the redemption period to sixty days after the filing of the bankruptcy petition, provided the petition is filed before the redemption period expires. *Thom*, 95 B.R. at 263.[31]

*Thom* left two thorny issues unresolved: whether any rights in the real property remain with the debtor after the redemption period expires, and whether a mortgagee can demonstrate entitlement to relief from stay in light of those rights.[32]

Those issues were first addressed in *Maine Sav. Bank v. Checkoway (In re Brittain)*, 148 B.R. 978 (Bankr.D.Me.1989), a Chapter 11 case. The debtor's statutory redemption period, as extended by § 108(b), expired after his petition was filed. The mortgagee moved for relief from stay. In response, the debtor argued that he retained a right to surplus proceeds from sale and contended that the property held sufficient value to yield such a surplus.[33] Op. at 978. Denying relief from stay on the record before it, the court held that: "[T]he possibility of a surplus is for the purposes of 362(d)(2)(A) an equity in property.... If the value of the property to be sold is reasonably likely to produce a surplus then this Court can deny relief from stay." *Id.* at 979. *Brittain* considered whether a mortgagee may obtain relief from stay after the right to redeem had expired to be an issue of fact, rather than an issue of law: "The issue of what property rights exist, if any, after the equity of redemption has expired must be addressed under the circumstances of each case." *Id.* at 979.

Two months later, *U.S. v. Raymond (In re Raymond)*, No. 89–10430, 1990 WL 471854 (Bankr.D.Me. Feb. 21, 1990), addressed a situation in which the debtors had filed their petition after expiration of redemption, but before the foreclosure

---

**30.** The *Thom* court observed: "Time and tide stayeth for no man." 95 B.R. at 263, quoting Richard Brathwaite, *English Gentlemen* at 189 (1690). *Thom* declined to follow cases holding that the stay suspends the running of a statutory period of redemption. *Thom*, 95 B.R. at 262, rejecting *Jenkins v. Peet (In re Jenkins)*, 19 B.R. 105 (D.Colo.1982) and *Moratzka v. Lanesboro State Bank (In re Johnson)*, 8 B.R. 371 (Bankr. D.Minn.1981).

**31.** Sec. 108(b) provides, in pertinent part,
[I]f applicable nonbankruptcy law, [or] an order entered in a nonbankruptcy proceeding ... fixes a period within which the debtor ... may ... cure a default ... and such period has not expired before the date of the filing of the petition, the trustee may only ... cure ... before the later of—
(1) the end of the period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order for relief.

**32.** *Thom* notes:
Debtor is still in possession of the subject premises. The stay provided by § 362 remains in full force and effect and does not terminate automatically at the expiration of the period of redemption. Section 362(a)(2) operates as a stay, applicable to all entities, of—"the enforcement against the debtor ... *of a judgment obtained before the commencement of the case* under this title;" and Section 362(a)(3) operates as a stay applicable to all entities of—"any act to obtain *possession* of property of the estate *or of property from the estate* ..." (emphasis added). The complaint for declaratory relief filed by SBA does not properly raise the issue of whether debtor has any remaining property rights or whether the SBA is entitled to relief from stay under 11 U.S.C. § 362(d). Those issues await the filing of further pleadings.
*Thom*, 95 B.R. at 264.

**33.** The debtor's characterization of his legal rights was not disputed. "The parties agree that debtor does not have an equity of redemption but that debtor is entitled to any surplus produced at a foreclosure sale over and above the amount the movant is due on the debt." *Brittain*, at 978.

sale. The debtors argued that § 1322(b)(5)'s right to cure [34] overrode state law defining their property rights.

The *Raymond* court noted a split of authority concerning the extent to which § 1322(b)(5) provides a Chapter 13 debtor the ability to cure mortgage defaults at different stages of the foreclosure process. Slip op. at 4, citing *Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428 (6th Cir.1985) (collecting cases), *cert. denied sub nom. Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). *Raymond* recognized that, under *Butner*, the existence and extent of the debtor's property rights is the province of state law. Slip op. at 5. It held:

> After the equity of redemption had expired, the Debtor retained no interest in the property under Maine law. As a result, the real estate is not property of the estate. The court will modify the automatic stay to permit the [mortgagee] to reschedule, republish, and conduct the foreclosure sale in this matter.

*Id.* at 6.[35]

Most recently, the bankruptcy/state law crossroads was charted by *In re Tucker*, 131 B.R. 245 (Bankr.D.Me.1991). The *Tucker* debtors filed their petition after judgment, but before the redemption period expired. They filed a Chapter 13 plan which called for curing their mortgage default by paying arrearages through the plan, and for current payments outside the plan. 131 B.R. at 245.[36]

*Tucker* embraced the analysis of *In re Glenn*, in which the Sixth Circuit held that a Chapter 13 debtor may de-accelerate a mortgage note and cure mortgage arrearages at any time before the foreclosure sale. *Glenn* held that § 1322(b)(5)'s cure right superseded a state court foreclosure, notwithstanding state law principles of merger by judgment. 760 F.2d at 1442. *Tucker* also referred to the Second Circuit's holding that a mortgagee's prefiling acceleration of the debt upon default does not bar "deacceleration and cure" through § 1322(b)(5). *In re Taddeo*, 685 F.2d 24, 25 (2d Cir.1982). Both *Glenn* and *Taddeo* stressed the need for meaningful implementation of Chapter 13's rehabilitative objectives. Each concludes that the need would remain unmet if Chapter 13's cure provisions were unable to trump contrary state law principles of contract and civil procedure.[37]

---

**34.** Sec. 1322(b) provides, in pertinent part, "[T]he plan may—(5) ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... claim on which the last payment is due after the date on which the final payment under the plan is due;"

**35.** *Raymond* observes that 14 M.R.S.A. § 6321 permits the mortgagee, *at its option,* to allow the mortgagor to reinstate the mortgage even after the redemption period has run. However, it holds that the discretion reserved to the mortgagee precludes characterizing such reinstatement as a "property right" of the debtor. Slip op. at 6, n. 1.

**36.** *Tucker* does not expressly state whether the plan was filed before the redemption period ran out. It is reasonable to assume that it was filed, in accordance with F.R.Bankr.P. 3015, within 15 days of the filing date and, therefore, before the redemption period expired.

**37.** *Taddeo*, citing both policy and the Code's legislative history, commented: "When Congress empowered Chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to 'deaccelerate' their mortgage and reinstate its original payment schedule." 685 F.2d at 26. It continued, "Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." 685 F.2d at 26–27. Finally, it observed:

> Conditioning a debtor's right to cure on its having filed a Chapter 13 petition prior to acceleration would prompt unseemly and wasteful races to the courthouse. Worse, these would be races in which the mortgagees possess an unwarranted and likely insurmountable advantage: wage earners seldom will possess the sophistication in bankruptcy matters that financial institutions do, and often will not have retained counsel in time for counsel to do much good. In contrast, permitting debtors ... to de-accelerate by payment of the arrearages will encourage parties to negotiate in good faith rather than having to fear that the mortgagee will tip the balance irrevocably by accelerating or that the debtor may prevent or at least long postpone this by filing a Chapter 13 petition.

685 F.2d at 27.

*Glenn* noted the combinations and permutations of state foreclosure laws and § 1322(b)(5), and the resulting variety in possible outcomes. The court opted for a pragmatic approach and

*Tucker*'s dictum may be read as a wholesale adoption of the *Glenn* rule, permitting cure at any time before the foreclosure sale, even though the debtor's statutory redemption rights under Maine law have expired. To the extent that *Tucker* appears to do so, it bestows rights that mortgagees no longer hold under state law, a result demonstrably at odds with *Raymond, Gull Air* and *Butner.*[38]

### D. *Analysis and Application*

■■■ Without question, the Code's cure provisions provide Chapter 13 debtors a prescription for preserving property in circumstances when, absent payment in full, state law does not. *See, e.g., In re Thompson,* 894 F.2d 1227, 1228 (10th Cir.1990); *In re Terry,* 780 F.2d 894, 896 (11th Cir.1985); *In re Glenn,* 760 F.2d at 1442; *In re Clark,* 738 F.2d 869, 871 (7th Cir.1984); *Grubbs v. Houston First Sav. Ass'n.,* 730 F.2d 236, 241–42 (5th Cir.1984) (en banc); *In re Taddeo,* 685 F.2d at 25. *Cf. Downey Sav. & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987) (discussing cure in bad faith context). Even those cases that describe the dimensions of cure in modest terms, limited by the antimodification provisions of § 1322(b)(2), permit reinstatement of the mortgage where state law would not. *See, e.g., First Nat'l Fidel-*

*ity Corp. v. Perry (In re Perry),* 945 F.2d 61, 65 (3d Cir.1991) (cure not available post-judgment); *In re Roach,* 824 F.2d 1370, 1377 (3d Cir.1987) (cure right survives acceleration, but not judgment).

Efforts to announce a sure rule of broad application will be frustrated by the diversity of state foreclosure law underlying the opinions.[39] The Code provides no clear temporal limit on curing defaulted mortgages under § 1322(b)(5). The *Glenn* court, addressing a state statute that provided post-sale redemption, expressed its frustration plainly:

> We despair of finding any clear-cut statutory language or legislative history that points unerringly to a construction of the statute that is free from challenge. Each of the cases and each result reached therein is subject to some objection either in theory or in practice. The result we reach here is, therefore, primarily a pragmatic one—one that we believe not only works the least violence to the competing concerns evident in the language of the statute but also one that is most readily capable of use.

760 F.2d at 1435.[40]

But given the diversity among the states' property laws, diversity among decisions

---

simply set a cut-off date for the debtor's ability to cure, that point being the "sale of the mortgaged premises." 760 F.2d at 1435. In two of the consolidated appeals before it, those of the Millers and the Pigloskis, cure was not permitted even though, under Michigan law, the debtors retained post-sale redemption rights. 760 F.2d at 1443.

**38.** Citing neither *Brittain* or *Raymond,* the *Tucker* court stated that a Chapter 13 debtor may invoke § 1322(b)(5) so long as a "final order terminating the equity of redemption has not yet been entered." *Id.* at 246. The reference to a "final order" is at odds with Maine law and practice. The foreclosure statute expressly terminates the mortgagor's rights in the property *automatically* upon expiration of the redemption period. No discrete court order is required. 14 M.R.S.A. § 6323.

**39.** In some states, even after a foreclosure judgment, a mortgagee only has a lien on the mortgagor's title. Wisconsin, for example, gives a mortgagor/debtor property rights to bring into the bankruptcy which Maine law does not provide its mortgagor/debtors in analogous situa-

tions. *See In re Clark,* 738 F.2d at 871 (Wisconsin law). Some states allow redemption up to one year after the foreclosure sale is completed. *See, e.g. In re Glenn,* 760 F.2d at 1436 (Ohio and Michigan law); *In re Ivory,* 32 B.R. 788 (Bankr. D.Or.1983) (collecting and classifying cases). *See also,* Douglas A. Winthrop, Note, *The Chapter 13 Cure Provisions: A Doctrine in Need of a Cure,* 74 Minn.L.Rev. 921 (1990).

**40.** Proposed changes to the Bankruptcy Code embodied in the final version of S.1985, 102d Cong., 2d Sess. (1992), which Congress failed to enact before its adjournment in 1992, were intended to clarify the right to cure residential mortgages under Chapter 13:

> The compromise bill did clarify that Chapter 13 debtors may cure mortgage defaults under Sections 1322(b)(3) or 1322(b)(5) until their homes are sold, notwithstanding applicable nonbankruptcy law to the contrary. This provision was intended to overturn ... *In re Perry* ... which found that, pursuant to state law, the entry of a foreclosure judgment prevented the debtors from curing the default and reinstating their home mortgage.

applying the Code's cure provisions is a necessary consequence of the *Butner* doctrine. *Butner v. U.S.*, 440 U.S. at 54, 99 S.Ct. at 917. The *Glenn* court's "pragmatic" approach, yielding a uniform rule, is vulnerable to the same criticisms that led to *Butner*'s holding.[41] This is particularly true when *Glenn* is transported to a jurisdiction, such as Maine, where property rights are defined differently.[42]

Cure is one thing; resurrection is another. If this court were to adopt *Glenn*'s formula exactly—if Maine debtors were allowed to cure up until the foreclosure sale—it would be reinstating, or recreating, rights in the real estate after they ceased to exist under state law. *Duprey v. Eagle Lake Water & Sewer Dist.*, 615 A.2d at 605; *St. Hilaire v. Berta*, 588 A.2d 309, 310 (Me.1991); *Martel v. Bearce*, 311 A.2d at 543. That would be impermissible under *Butner*. "No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest under state law." *In re Thompson*, 894 F.2d at 1229.

■■■■■ I conclude that, under *Butner* and Maine law, a bright line is crossed when the debtor files his or her petition after the statutory right to redemption expires. My view is similar to that articulated in *Raymond:* Under Maine foreclosure law, once the redemption period expires, the mortgagor no longer holds a property right which devolves to the estate.[43]

Here, the Cormiers' pending petition was filed after their statutory right of redemption expired. Their bankruptcy estate holds no rights in the real property. Thus, relief from stay will issue.[44]

## IV. CONCLUSION

For the reasons set forth above, Lomas' motion for relief from the automatic stay under § 362 is granted. A separate order consistent with this opinion will issue forthwith.

*Bankruptcy Bill Dies in House, Consumer Bankr. News* (B.C.D.), October 16, 1992 at 12.

**41.** *Butner* addressed the Third and Seventh Circuits' attempt to supplant a mortgagee's state law rights in rents and profits with a "uniform, federal approach to the question...." 440 U.S. at 55, 99 S.Ct. at 918. The Supreme Court explicitly rejected that approach because, among other reasons, "at least in some circumstances, [it] affords the mortgagee rights that are not his as a matter of state law." *Id.* at 56, 99 S.Ct. at 918.

**42.** The Tenth Circuit followed *Glenn* and permitted post-judgment cure in *In re Thompson*, 894 F.2d at 1230, decided under Oklahoma law permitting redemption up to the date of sale. *Id.* The court considered that the right to cure should "resemble" its state law analog, extending through the redemption period, at least up to the point of sale, when the rights of third parties come into play. *Id.* It also noted that, at least in Oklahoma, the "relationship between mortgagor and mortgagee under state law is unchanged" between judgment and sale. *Id.*

In expansive dictum, the court mistakenly stated that "[a]ll states apparently permit redemption of mortgaged property, not simply until the date of the foreclosure judgment, but until a foreclosure sale." *Id.* (citation omitted). As discussed above, Maine presents a different picture: the mortgagor's rights in the real estate

expire before the date of sale *and* the mortgagee is entitled to possession when the redemption period expires.

**43.** The Cormiers' seek to cure and reinstate their mortgage, notwithstanding pre-petition expiration of the redemption period. In contrast, the bank in *Brittain* sought relief from stay once the redemption period expired post-petition. Thus, the instant case does not directly implicate *Brittain's* holding. However, *Brittain* takes the view that, after the redemption period expires, a debtor may retain an interest in the *real estate* as a function of its value. This perspective is at odds with today's decision and the law as most recently articulated by Maine's highest court. *Duprey v. Eagle Lake Water & Sewer Dist.*, 615 A.2d at 605.

**44.** Today's decision does not reach a number of issues, including: 1) What is the impact of failure to confirm, or at least to file, a plan before the redemption period expires? 2) When the redemption period expires pre-petition, is relief from stay required to commence advertising the sale? 3) When the redemption period expires pre-petition, is relief from stay required to hold a previously-advertised foreclosure sale? 4) How does the filing of a bankruptcy petition, followed by relief from stay, affect the statutorily-prescribed schedule for advertising and conducting a foreclosure sale?